**Brynn Andrew HELBER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–95–00926–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 1, 1996.

James D. Farmer, Houston, for Appellant.

John B. Holmes, Jr., Houston, Alan Curry, Houston, Jeff Vaden, Houston, for Appellee.

Before HUTSON–DUNN, O'CONNOR and ANDELL, JJ.

## OPINION

HUTSON–DUNN, Justice.

This is an appeal from a writ of habeas corpus proceeding. Appellant, Brynn Andrew Helber, argues in a single point of error that the trial court erred in denying his writ of habeas corpus. The issue before this Court is whether, when the two proceedings stem from the same set of events, an administrative suspension of appellant's driver's license bars a later prosecution for driving while intoxicated. Because we find that appellant has not been twice punished for the same offense, we affirm the trial court's denial of the writ of habeas corpus and overrule appellant's sole point of error.

### Summary of Facts

Appellant was stopped and arrested by a Houston Police officer on suspicion of driving while intoxicated. At the time of the arrest, the officer requested that appellant submit a breath specimen for an analysis of alcohol concentration; appellant complied. The specimen contained a concentration of not less than 0.10. Appellant was served immediately with notice of license suspension. Approximately one and one-half months later, an administrative hearing was held at which the Texas Department of Public Safety suspended appellant's license for 60 days because he

"provided a specimen of ... breath and an analysis of the specimen showed an alcohol concentration of a level specified in Section 49.01, Texas Penal Code, following an arrest for an offense prohibiting the operation of a motor vehicle while intoxicated as provided in Article 6687b–1, V.T.C.S."

The State's case against appellant for DWI is still pending.

### Appellant's Pleadings

Appellant raises one point of error. He argues that the trial court erred in denying his writ of habeas corpus. He contends that he will be twice punished for the same offense if the State is allowed to proceed with its DWI prosecution following the administrative suspension of his license. Appellant argues that the doctrine of double jeopardy bars the DWI prosecution in this instance.

The State answers by arguing that the Texas legislature has expressed a clear legislative intent not to bar a subsequent criminal prosecution based upon the suspension of appellant's driver's license. The State also contends that the DWI statute and the administrative license suspension statute are not the "same offense" for purposes of double jeopardy.

### Analysis

The Double Jeopardy Clause protects against three types of abuses: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Appellant argues he is being denied the third of these protections, and therefore the doctrine of double jeopardy bars the DWI prosecution.

It is well-settled that when a defendant claims that a subsequent prosecution for the same conduct would result in double jeopardy, we look to the test set out in *Blockburger v. United States*, 284 U.S. 299, 303–04, 52 S.Ct. 180, 182, 76 L.Ed. 306

(1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. This is known as the "same-elements" test. This rule protects a defendant from being punished twice for the same offense. *Halper,* 490 U.S. at 440, 109 S.Ct. at 1897. "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not," the offenses are not the same under the *Blockburger* test, and double jeopardy is not implicated. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. The same-elements test examines whether each offense contains an element not contained in the other; if not, they are the same offense, and double jeopardy bars successive prosecution. *United States v. Dixon,* 509 U.S. 688, ———, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993).

■ A person's license is suspended by the Department of Public Safety upon an administrative determination that he was: (1) driving or operating a motor vehicle (2) in a public place (3) while having an alcohol concentration of 0.10[1] or more. TEX.REV.CIV. STAT.ANN. art. 6687b–1 § 5(a) (Vernon Supp. 1996). A person will be found guilty of a DWI offense upon a finding that he was: (1) driving or operating a motor vehicle (2) in a public place (3) while intoxicated. TEX.PE-NAL CODE ANN. § 49.04 (Vernon 1994). For DWI purposes, however, a person is "intoxicated" if he either: (1) had an alcohol concentration of 0.10 or more; or (2) did not have the normal use of his mental or physical faculties due to the introduction of a substance or substances into his body. TEX.PE-NAL CODE ANN. § 49.01(2) (Vernon 1994). The State argues that because intoxication in the DWI statute can be proven by showing defendant did not have the normal use of mental or physical faculties by reason of the introduction of alcohol into the body, it contains an element that the license suspension does not, and therefore they are not the same offense. We are not persuaded by this argument.

■ While the DWI statute provides two different means of proving "intoxication," the alternate means of proof are not in and of themselves elements. The focus here is on the act or transaction that constitutes the crime—driving while legally intoxicated. The act or transaction subject to the sanction of the driver's license suspension is the same act or transaction subject to criminal penalty under the DWI statute. If a person is found with a concentration of alcohol of .10% or more in his blood and urine, the Penal Code defines this as "intoxicated." TEX.PENAL CODE ANN. § 49.01(2) (Vernon 1994). And, although the suspension statute only requires a showing that a person has a blood alcohol level of .10% or more, this is the equivalent of proving "intoxication." If in the DWI case, the State proves the loss of normal

1. Article 6687b–1 § 5(a) provides that the Department of Public Safety "shall suspend the driver's license of a person if it determines that the person had an alcohol concentration of a level specified in Article 67011–1a(2)(B), Revised Statutes, while driving or operating a motor vehicle in a public place." TEX.REV.CIV.STAT.ANN. 6687b–1 § 5(a) (Vernon Supp.1996).

Article 6701*l*–1a(2) provided:
(2) 'Intoxicated' means:
(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a substance or its vapors that contain a volatile chemical, an abusable glue, or an aerosol paint, or a combination of two or more of those substances into the body; or

(B) having an alcohol concentration of 0.10 or more.

TEX.REV.CIV.STAT.ANN. art 6701*l*–1a(2) (Vernon Supp.1995) (repealed, effective September 1, 1994). Section 49.01(2) of the Texas Penal Code codifies old article 6701*l*–1(a), and provides similar alternative definitions of intoxication:
(2) "Intoxicated" means:
(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
(B) having an alcohol concentration of 0.10 or more.

TEX.PENAL CODE ANN. 49.01(2) (Vernon 1994).

faculties instead of .10% alcohol concentration, it is also proving "intoxication." Therefore, we construe the elements to be shown under the DWI statute: that the defendant is (1) intoxicated, (2) while driving or operating a motor vehicle, (3) in a public place, § 49.04(a); to be the same as the elements to be shown for suspension of the driver's license: (1) person has an alcohol concentration of .10%, (2) while driving or operating a motor vehicle, (3) in a public place, article 6687b–1, § 5(a).

■ The analysis does not end here. When the two offenses for which a defendant is punished or tried cannot survive the *Blockburger* test, double jeopardy is implicated. *Dixon*, 509 U.S. at 688, 113 S.Ct. at 2856–57. However, merely showing that the two offenses for which the defendant is punished or tried contain the same elements does not mean the double jeopardy bar always applies. *Dixon*, at ———–———, 113 S.Ct. at 2856–57 (1993). The Supreme Court in *Dixon* held that if the two offenses contain the same elements, and a defendant is prosecuted under one, double jeopardy bars *additional punishment* and successive prosecution under the other. *Id.* Double jeopardy is not implicated if the second proceeding does not constitute "additional punishment." We now must determine whether the sanctions for DWI and the administrative license suspension would result in a double punishment of appellant.

Appellant argues that, under *Halper*, a sanction rises to the level of punishment when it is not solely remedial, but serves the goals of punishment—retribution and deterrence. We believe appellant reads *Halper* too broadly. Not only is the language of the opinion narrow and limited, but the Justices' later references in the opinion emphasize that the decision is narrow. Consequently, we find no justification for applying appellant's broad-sweeping interpretation.

The *Halper* decision is saturated with limiting language. *Halper* provides that the determination of whether a given civil sanction constitutes punishment for double jeopardy purposes "requires a particularized assessment of the penalty imposed and the purposes that the penalty *may fairly be said to serve.*" *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901 (emphasis added). Both civil and criminal sanctions constitute punishment when the sanctions "*as applied in the individual case* [serve] the goals of punishment." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02 (emphasis added). Sanctions that "*cannot fairly be said* solely to serve a remedial purpose, but rather can *only be explained as* also serving either retributive or deterrent purposes [are] punishment." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902 (emphasis added).

Moreover, the narrow ruling in *Halper* is merely that a defendant "may not be subjected to an additional civil sanction *to the extent that* the second sanction *may not fairly be characterized as remedial, but only as a deterrent or retribution.*" *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902 (emphasis added). The Court stated:

> What we announce now is *a rule for the rare case,* the case such as the one before us, *where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason:* Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceedings bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

> [T]he only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment *that is not rationally related* to the goal of making the Government whole.

*Halper*, 490 U.S. at 449–50, 452, 109 S.Ct. at 1902, 1903 (emphasis added).

▮▮▮▮ Taken as a whole, the *Halper* decision is narrow. *Halper* does not hold, as appellant suggests, that a sanction becomes punishment if it *in any way* serves the goals of deterrence or retribution. In fact, the appellant's argument has been inherently rejected by the Supreme Court. The Court has recognized that sanctions may serve deterrent or retributive purposes without rising to the level of punishment. *See Department of Revenue v. Kurth Ranch*, — U.S. —, —, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994). A civil penalty may be remedial, rather than punitive, if it merely reimburses the government for its costs arising from the defendant's conduct. *Id.* (citing *Halper*, 490 U.S. at 449–50, 109 S.Ct. at 1902). Therefore, although retributive in that it reimburses the government for its costs, the civil penalty does not become punishment unless it bears "no rational relation to the goal of compensating the Government for its loss." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902.

▮▮▮▮ A sanction does not become punishment for double jeopardy purposes merely because it serves an obvious deterrent purpose. *Kurth Ranch*, — U.S. at —, 114 S.Ct. at 1946–47. It becomes punishment when it is completely disproportionate to its rational purpose. The *Kurth Ranch* Court noted that "criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals, *and deter certain behavior.*" *Kurth Ranch*, at —, 114 S.Ct. at 1945 (emphasis added). However, the Court stated that the deterrent purpose of a Montana tax did not automatically render the tax as punishment. *Kurth Ranch*, at — – —, 114 S.Ct. at 1946–47 (1994) (stating that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment").

Therefore, the appellant's argument is unavailing. *Halper* must be read narrowly, as the Court intended.[2] If it applies directly to the issue at hand,[3] *Halper* requires a disproportionality test. Under this test, a sanction becomes punishment when the deterrent or retributive effect far outweighs the remedial effect.

We note that appellate courts nationwide have addressed the same issue: Whether under *Halper*, an administrative license suspension prohibits a later-imposed sanction

---

2. Furthermore, the Court's intention to read the case narrowly stems not only from the limiting words in the opinion, but also from the Justices' citations to *Halper* in *Kurth Ranch. See Kurth Ranch*, — U.S. at —, 114 S.Ct. at 1945 ("[W]e held that 'a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."); *Kurth Ranch*, at —, 114 S.Ct. at 1949 (Rehnquist, C.J., dissenting) ("This clearly is not the 'rare case' contemplated by *Halper.* . . ."); *Kurth Ranch*, at —, 114 S.Ct. at 1949 (O'Connor, J., dissenting) (stating that double jeopardy occurs "when, as in *Halper*, the amount of the sanction is 'overwhelmingly disproportionate' to the damages caused by the wrongful conduct and thus 'is not rationally related to the goal of making the Government whole' "). Each citation to *Halper* repeated the limiting language in Justice Blackmun's opinion. We can find no justification for a broad reading of *Halper* when the Justices' own citations to the opinion reiterate the limited nature of the ruling.

3. We note that the Court refused to apply the *Halper* rule to the issue of whether a tax may be characterized as punishment. *Department of Revenue v. Kurth Ranch*, — U.S. —, —, 114 S.Ct. 1937, 1944, 128 L.Ed.2d 767 (1994). "In *Halper* we considered 'whether and under what circumstances a civil penalty may constitute "punishment" for double jeopardy analysis.' Our answer to that question does not decide the different question whether Montana's tax should be characterized as punishment." *Id.* (quoting *United States v. Halper*, 490 U.S. 435, 436, 109 S.Ct. 1892, 1895, 104 L.Ed.2d 487 (1989)). Other courts addressing the license suspension issue have recognized that *Halper* does not directly apply. *See State v. Higa*, 79 Hawai'i 1, 897 P.2d 928, 932–33 (1995); *Butler v. Department of Public Safety*, 609 So.2d 790, 796–97 (La.1992); *State v. Maze*, 16 Kan.App.2d 527, 825 P.2d 1169, 1174 (1992); *Johnson v. State*, 95 Md.App. 561, 622 A.2d 199, 205 (1993). These courts have, nevertheless, applied the broad principles underlying *Halper* to determine that the license suspension is remedial rather than punitive.

for a DWI or DUI conviction. Our research reveals only one unpublished appellate case that interprets *Halper* according to appellant's analysis, and therefore, holds that an administrative license suspension is punishment because the legislature intended a deterrent purpose. *See State v. Gustafson,* No. 94 C.A. 232, 1995 WL 387619, at *5 (Ohio Ct.App. June 27, 1995) (unpublished opinion), *appeal granted,* 73 Ohio St.3d 1427, 652 N.E.2d 800 (1995). We also note that the Ohio Supreme Court has granted an appeal in that case.

On the other hand, a plethora of appellate decisions—both published and unpublished—have held that, under *Halper,* a driver's license suspension is not punishment for double jeopardy purposes.[4] These courts have

concluded that the license suspension is not punishment for a myriad reasons. For example, some courts determine, as we do, that *Halper* requires a disproportionality test. Applying this test, they find that the remedial purpose of protecting public safety outweighs any deterrent or retributive effect.[5] Some courts rule that the administrative license suspension is not remedial in the sense used in *Halper,* nor is it for retribution or deterrence; instead, it serves to protect the public by removing persons who have shown themselves to be safety hazards from the streets and highways.[6] Others rule that the administrative license suspension hearing is civil or administrative in nature, providing further support for finding the license suspension to be remedial rather than punishment.[7] Finally, other courts summarily rule

4. *See United States v. Bulloch,* 994 F.2d 844 (8th Cir.1993) (tabular disposition, opinion unpublished); *State v. Nichols,* 169 Ariz. 409, 819 P.2d 995, 998 (1991); *Davidson v. MacKinnon,* 656 So.2d 223, 224 (Fla. 5th Dist.Ct.App.1995); *Gomez v. State,* 621 So.2d 578 (Fla. 3rd Dist.Ct.App. 1993); *Freeman v. State,* 611 So.2d 1260, 1261 (Fla.2d Dist.Ct.App.1992); *State v. Higa,* 79 Hawai'i 1, 897 P.2d 928, 933–34 (1995); *State v. Maze,* 16 Kan.App.2d 527, 825 P.2d 1169, 1174–75 (1992); *Butler v. Department of Public Safety & Corrections,* 609 So.2d 790, 797 (La.1992); *Johnson v. State,* 95 Md.App. 561, 622 A.2d 199, 205–06 (1993); *State v. Hanson,* 532 N.W.2d 598, 602 (Minn.Ct.App.1995); *State v. Young,* 3 Neb.App. 539, 530 N.W.2d 269, 278 (1995); *State v. Cassady,* 140 N.H. 46, 662 A.2d 955, 958, 959 (1995); *State v. Sims,* No. CA94–12–215, 1995 WL 493291 at *7 (Ohio Ct.App. August 21, 1995) (unpublished opinion); *State v. Miller,* No. 2–94–32, 1995 WL 275770 at *3 (Ohio Ct.App. May 12, 1995) (unpublished opinion); *State v. Strong,* 158 Vt. 56, 605 A.2d 510, 514 (1992).

5. *See United States v. Bulloch,* 994 F.2d 844 (8th Cir.1993) (tabular disposition, opinion unpublished) (stating that "the administrative sanction ... is not so divorced from any remedial goal that it 'constitutes punishment' for purposes of double jeopardy"); *State v. Nichols,* 169 Ariz. 409, 819 P.2d 995, 998 (1991) (holding that "the fact that a statute designed primarily to serve remedial purposes incidentally serves the purposes of punishment as well does not mean that the statute results in punishment for double jeopardy purposes"); *Butler v. Department of Public Safety & Corrections,* 609 So.2d 790, 797 (La.

1992) (holding that the license suspension is "not so divorced from its intended remedial goal that it amounts to a second punishment"); *State v. Hanson,* 532 N.W.2d 598, 602 (Minn.Ct.App. 1995) (holding that the suspension is " 'rationally related' to its legislative purpose of protecting public safety") (quoting *Halper,* 490 U.S. at 451, 109 S.Ct. at 1903); *State v. Sims,* No. CA94–12–215, 1995 WL 493291 at *7 (Ohio Ct.App. August 21, 1995) (unpublished opinion) (applying disproportionality analysis from *Halper* and finding the license suspension to be non-punitive); *State v. Miller,* No. 2–94–32, 1995 WL 275770 at *3 (Ohio Ct.App. May 12, 1995) (unpublished opinion) (holding that the incidental effect of punishing the licensee did not, without more, mean that the license suspension constituted punishment); *State v. Strong,* 158 Vt. 56, 605 A.2d 510, 514 (1992) (holding that "[t]he fact that a statute designed primarily to serve remedial purposes incidentally serves the purpose of punishment as well does not mean that the statute results in punishment for double jeopardy purposes").

6. *See Davidson v. MacKinnon,* 656 So.2d 223, 224 (Fla.Dist.Ct.App.1995); *State v. Murray,* 644 So.2d 533, 535 (Fla.Dist.Ct.App.1994); *Gomez v. State,* 621 So.2d 578 (Fla.Dist.Ct.App.1993); *Freeman v. State,* 611 So.2d 1260, 1261 (Fla.Dist. Ct.App.1992).

7. *See State v. Maze,* 16 Kan.App.2d 527, 825 P.2d 1169, 1174–75 (1992); *Johnson v. State,* 95 Md. App. 561, 622 A.2d 199, 205–06 (1993); *State v. Cassady,* 140 N.H. 46, 662 A.2d 955, 958, 959 (1995).

that the license suspension serves a purely remedial function.[8]

Both our reading of the case and our analysis of the foregoing authorities indicate that the *Halper* rule is narrow in scope. We hold that the principles underlying *Halper* require us to apply a disproportionality analysis to determine whether the primary purpose for the license suspension is remedial or whether the primary purpose is for retribution or deterrence. If the remedial purpose is far outweighed by a retributive or deterrent purpose, then the sanction is punishment. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902.

In light of the *Halper* disproportionality analysis, we turn to the question of whether the deterrent or retributive effect of the administrative license suspension statute far outweighs the remedial purpose. Appellant asserts that the Texas legislature designed the administrative license suspension to promote retribution and deterrence; therefore, the punishment for DWI would be an impermissible second punishment under double jeopardy analysis. We disagree. The primary purpose of Texas' administrative license suspension procedure is to protect the public safety from potentially dangerous drivers. This primary purpose is not outweighed by the incidental deterrent effect.

When the language of a statute is unambiguous, the court must gather the intent of the legislature from the " 'plain and common meaning of the words and terms used.' " *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993) (quoting *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990)). *See also Berel v. HCA Health Servs. of Texas, Inc.*, 881 S.W.2d 21, 25 (Tex.App.—Houston [1st Dist.] 1994, writ denied) ("If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are not necessary.").

Here, the plain language of the statute indicates that the legislature did not intend the administrative suspension to bar a subsequent criminal prosecution. It expressly states that the suspension

> is a civil matter, is independent of and is not an estoppel as to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension, and does not preclude litigation of the same or similar facts in a criminal prosecution.

TEX.REV.CIV.STAT.ANN. art. 6687b–1 § 5(d) (Vernon Supp.1996).

After reviewing the plain language of the statute, we find that the primary purpose for the administrative license suspension is to protect the public from the offending driver while his criminal prosecution is pending. We do not ignore the incidental deterrent effect; we merely find that the deterrent effect does not outweigh the remedial purpose. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. We also recognize that the appellant may feel punished; however, the determination of whether a sanction constitutes punishment cannot be solved from the defendant's perspective, because even remedial sanctions "carry the sting of punishment." *Halper*, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901.

For these reasons, we overrule appellant's single point of error. We affirm the trial court's denial of appellant's petition for writ of habeas corpus.

---

**8.** *See State v. Higa*, 79 Hawai'i 1, 897 P.2d 928, 933–34 (1995); *State v. Young*, 3 Neb.App. 539, 530 N.W.2d 269, 278 (1995).