**John Michael DOWLING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–95–0324–CR.**

Court of Appeals of Texas,
Amarillo.

March 29, 1996.

Warren L. Clark, Amarillo, for appellant.

Sonya Letson, Potter County Attorney, Richard Martindale, Assistant County Attorney, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

QUINN, Justice.

John Michael Dowling appeals from an order denying his petition for habeas corpus. His sole point of error involves whether the constitutional prohibition against multiple punishments for the same offense prevents the State from prosecuting him for driving while intoxicated after his driving privileges were administratively suspended. We overrule the point and affirm the lower court's decision.[1]

---

1. Prior to September 1, 1995, the provisions under which the State could administratively suspend one's license for driving while intoxicated were found at article 6687b-1 of the Texas Revised Civil Statutes. They are now located at §§ 524.001 *et. seq.* and § 724.001 *et. seq.* of the Texas Transportation Code Annotated (Vernon 1996). For the sake of convenience and because the provisions of 6687b-1 here pertinent can be found in the Transportation Code, we will cite to the Transportation Code.

### Background

Dowling stands charged with driving while intoxicated. At the time of his arrest, the arresting officer requested and received from him a specimen of his breath. Analysis revealed an alcohol concentration of at least .10. This obligated the officer to notify Dowling that his driver's license would be suspended in accordance with § 524.011 of the Texas Transportation Code.

Upon receiving the foregoing notification, Dowling timely petitioned for an administrative hearing. The latter was subsequently convened. After hearing the evidence, the administrative law judge found, among other things, that Dowling drove his vehicle during the time in question while having an alcohol concentration of 0.17 grams of alcohol per 210 liters of breath and concluded that his license could be suspended for 60 days. His license was then suspended by the Texas Department of Public Safety.

Next, Dowling filed an application for writ of habeas corpus with the local county court at law. Therein he contended that the administrative suspension of his license precluded the State from criminally prosecuting him for driving while intoxicated. Disagreeing, the trial court denied the application.

### Law

■ As previously mentioned, Dowling asserts that the State is using the administrative and criminal proceedings to twice punish him for the same offense. This allegedly places him in double jeopardy contrary to the Fifth Amendment to the United States Constitution and article I, § 14 of the Texas Constitution.[2] Admittedly, we recognize that one may not be subjected to multiple punishments, through separate proceeding, for the same offense. *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex.Crim.App.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2584, 132 L.Ed.2d 833

(1995). However, the issue here entails whether the administrative suspension of Dowling's driver's license constituted punishment. If it does not, then the State may criminally prosecute him for driving while intoxicated without fear of trampling upon his rights against double jeopardy.

■ Thus, we turn to the issue of whether the suspension constituted punishment. In doing so, we heed the admonition against putting form over substance. *See Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, — – —, 114 S.Ct. 1937, 1944–1945, 128 L.Ed.2d 767, 777 (1994) (recognizing that the legislature's description of a sanction as civil does not foreclose the possibility that it has a punitive character); *United States v. Halper*, 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487, 501–502 (1989) (stating that the labels " 'criminal or civil' " are not of paramount importance). That is, the State may not twice punish an accused merely by calling one of the proceedings civil or administrative and the other criminal. *Id.* Though names are often indicative of the nature of the thing they represent, that is not always so.

■ Instead, we must investigate the nature of the proceeding and its resulting sanctions, if any. *United States v. Halper*, 490 U.S. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501–502. If upon doing so, we conclude that they exist to extract retribution from or to deter the unlawful conduct of an accused, then they are tantamount to punishment. *Id.* at 448, 109 S.Ct. at 1901–1902, 104 L.Ed.2d at 501–502. However, if we discover that they exist to foster a remedial purpose or other legitimate governmental interest unrelated to securing retribution or deterrence, then they are not the punishment contemplated by double jeopardy. *Id.*

■ But, what of the expanse lying between these two boundaries? What of the

---

**2.** Despite referring to both the United States and Texas Constitutions in his point of error, Dowling does not contend that the State charter affords him greater rights than the federal document. Indeed, he cites *Parrish v. State*, 889 S.W.2d 658 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) as holding that the protections afforded by article I, section 14 of the Texas Constitution equal those of the Fifth Amendment of the United States Constitution. Thus, we follow his lead

and analyze the point solely with regard to the Fifth Amendment of the United States Constitution, as applied through the Fourteenth Amendment of the very same document. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding that the Double Jeopardy Clause of the Fifth Amendment applies to the various states through the Fourteenth Amendment).

situation wherein the relief accorded the state or meted out against its citizens have punitive and remedial effect? What test do we apply then? Alas, the United States Supreme Court has addressed that circumstance as well and has declared that we follow the historical concept of "rough justice." *United States v. Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 502. This requires us to decide whether the measure involved, though being punitive, nevertheless bears a rational relationship to non-punitive goals espoused by the State. *See id.* at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502 (declaring that where a civil penalty bears no rational relation to the goal of compensating the government but appears to qualify as punishment in the plain meaning of the word, then the penalty may be punishment). If this rational relationship is non-existent or if the punitive aspects of the remedy overwhelm the non-punitive, then the sanction again equates punishment. *Id; see Ex parte Arnold,* 916 S.W.2d 640 (Tex. App.—Austin 1996, no pet. h.) (holding that if the "primary effect" of sanction is remedial, then it cannot be considered punishment); *Helber v. State,* 915 S.W.2d 955 (Tex.App.— Houston [1st Dist.] 1996, no pet. h.) (holding that *Halper* requires a disproportionality test under which a sanction becomes punishment when its deterrent or retributive effect far outweighs the remedial effect); *Ex parte Tharp,* 912 S.W.2d 887, 894 (Tex.App.—Fort Worth 1995, pet. granted) (adopting the disproportionality test); *Malone v. State,* 864 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, no pet.) (interpreting the test as one wherein the court decides whether the statutory scheme was so punitive in purposes or effect so as to negate any non-punitive intentions).[3]

In applying "rough justice" to the suspension at bar, we conclude that double jeopardy is not implicated. Our jurisprudence recognizes that by suspending one's license, the State endeavors to protect the public from incompetent and careless drivers. *Texas Dept. of Public Safety v. Richardson,* 384 S.W.2d 128, 132 (Tex.1964); *Davison v. State,* 166 Tex.Crim. 376, 313 S.W.2d 883, 886 (App.1958) (holding that it serves "solely" to protect the public while using the State's thoroughfares); *accord Ex parte Arnold, supra* (holding that license revocation is designed solely for the protection of the public in the use of the highways). That purpose was underscored during the legislative hearings which culminated in the creation of the suspension proceeding at issue. In discussing the pending legislation, many voiced concern for "reduc[ing] deaths and injuries," "detour[ing] those who drink before they hurt themselves or someone else," "reducing involvement of drinking drivers in fatal accidents," "sav[ing] lives," enhancing "public safety," and "remov[ing] the safety hazard" as reason to enact legislation permitting suspension.[4]

Furthermore, suspending the licenses of those shown to have created the hazard sought to be addressed by the State certainly bears logical nexus to its goal of reducing the hazard. That the sanction may be over or under-inclusive does not necessarily vitiate this nexus. Indeed, those possibilities are part and parcel of the "rough justice" equation. Determining the precise amount of remediation needed to ameliorate a perceived hazard is more an estimation than a science. As the United States Supreme Court itself acknowledged, the "inquiry" is not "an exact pursuit." *See United States v. Halper,* 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at

**3.** Incidentally, the tests used in *Kurth Ranch* and *Halper* are not novel. Indeed, in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) the United States Supreme Court listed the factors normally used in deciding whether an act constitutes punishment or regulation. They include whether it involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation promotes the traditional aims of punishment, that is, retribution and deterrence, whether the behavior to which it applies is also a crime, whether an alternative

purpose to which it may rationally be connected exists, and whether it appears excessive in relation to that alternative purpose. *Id.* at 168–69, 83 S.Ct. at 567–68, 9 L.Ed.2d at 660–61.

**4.** The desire to punish those who drove while drunk or deter such conduct was also voiced. Yet, this does not detract from the fact that the legislature was also asked to use its police powers to protect the public and that such was a goal in permitting license suspension. Nor does it establish that the legislature sought only to punish.

502. So long as the remedy selected remains *reasonable* in relation to its non-punitive goal, the measure must be considered non-punitive. And, Dowling has not shown that the supposed over or under-inclusion is of such magnitude so as to overwhelm or negate the rational relationship found here.[5]

In sum, the sanction of suspending one's license pursuant to § 524.001 *et. seq.* of the Texas Transportation Code is rationally related to a legitimate, non-punitive governmental interest. Its punitive aspects, though present, do not overwhelm its remedial nature. Thus, we join *Tharp, Arnold,* and *Helber* and hold that Dowling was not punished when the State suspended his driver's license. Given the absence of previous punishment, he cannot invoke double jeopardy to bar his prosecution for driving while intoxicated.

We affirm the order denying Dowling's application for writ of habeas corpus.

---

**5.** Incidentally, being able to lawfully drive on public roads has historically been viewed as an opportunity extended by the State upon completing various tests, or as viewed by the Texas Supreme Court, a privilege, *Texas Dept. of Public Safety v. Richardson,* 384 S.W.2d at 132, subject to revocation. The revocation of such voluntarily granted privileges, according to the United States Supreme Court, "is characteristically free of the punitive criminal element." *Helvering v. Mitchell,* 303 U.S. 391, 399, & n. 2, 58 S.Ct. 630, 633, & n. 2, 82 L.Ed. 917, 921, & n. 2 (1938) (noting that revocating an alien's permission to remain within the country or one's license to practice law is not punishment).