**Ex parte James Gordon
PIPKIN, Appellant.**

No. 07–96–0250–CR.

Court of Appeals of Texas,
Amarillo.

Dec. 4, 1996.

Law Offices of Mike Brown, Mike Brown, Lubbock, for appellant.

Lubbock County District Attorney, William C. Sowder, Michael West, Lubbock, for appellee.

Before BOYD, C.J., and QUINN, J., and REYNOLDS, Senior Justice.*

QUINN, Justice.

James Gordon Pipkin, appellant, appeals from an order overruling his petition for writ of habeas corpus. Furthermore, his sole point of error involves whether the State was collaterally estopped from trying him for the criminal offense of driving while intoxicated after it unsuccessfully attempted to suspend his license pursuant to § 524 of the Texas Transportation Code. We overrule the point and affirm.

### *Background*

The facts are relatively undisputed. Appellant is currently charged, under § 49.04 of the Texas Penal Code, with operating a motor vehicle "in a public place, to-wit: a public road and highway" while intoxicated. Though trial on the matter pends, effort was previously made to administratively suspend his driver's license pursuant to § 524 *et. seq.* of the Texas Transportation Code. To that end, he, with legal counsel, appeared before an administrative law judge on February 29, 1996, and participated in a hearing to determine whether suspension should result. The State also appeared through its legal counsel, Mary Ortiz, a deputy district attorney. Apparently, only one witness was called to testify.[1]

Thereafter, the administrative law judge entered its decision concluding that the evidence "was insufficient to establish all the elements of the [Texas Department of Public Safety's] case by a preponderance of the evidence." Specifically, it was found that the Department of Public Safety failed to prove that appellant "was driving or in control of a motor vehicle in a public place." No one appealed.

With the aforementioned decision and finding in hand, appellant petitioned the County Court at Law No. 2 for a writ of habeas corpus. He contended that the doctrine of collateral estoppel, founded in the Double

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

1. We say "apparently" because appellant did not include a transcription of the administrative proceeding in the appellate record. So, what actually occurred during the hearing is unknown, as is the actual nature and extent of the testimony offered, the actual extent to which each party was permitted to offer evidence, the actual extent to which each party was permitted to examine and cross-examine witnesses, the actual extent to which each party was permitted to offer legal argument, and the actual extent to which each party was permitted to develop its respective legal and factual positions. This is hardly conducive to our determining whether the procedures utilized during the administrative proceeding afforded the parties a full and fair opportunity to litigate the issues, a prerequisite to invoking collateral estoppel. *Muckelroy v. Richardson Independent Sch. Dist.*, 884 S.W.2d 825, 830 (Tex. App.—Dallas 1994, writ denied); *see Ex parte Tarver*, 725 S.W.2d 195, 199 (Tex.Crim.App. 1986). However, testimony was adduced, at the hearing upon appellant's petition for habeas corpus, that the prosecuting attorney called no one other than the arresting officer.

Jeopardy clause of the Fifth Amendment to the United States Constitution and article I, § 14 of the Texas Constitution, prohibited the State from relitigating, via the pending criminal case, whether he drove or operated a motor vehicle in a public place. The trial court convened a hearing upon his motion, received evidence, heard argument, and overruled the request. Appellant timely appealed.

### Standard of Review

■■■ Whether to grant a petition for habeas corpus lies within the discretion of the trial court, and the exercise of that discretion will not be disturbed unless clearly abused. *Ex Parte Ayers*, 921 S.W.2d 438, 441 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *see McCulloch v. State*, 925 S.W.2d 14, 15 (Tex. App.—Tyler 1995, pet. ref'd), *cert. denied*, —— U.S. ——, 116 S.Ct. 477, 133 L.Ed.2d 406 (1995) (holding that the trial court's determination may be disturbed only if it is clearly erroneous). And, whether discretion was so abused depends upon whether the trial court acted without reference to any guiding principles or rules. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990). In determining this, we not only accord great deference to the trial court's findings and conclusions, but also view the evidence in the light most favorable to its ruling. *McCulloch v. State*, 925 S.W.2d at 15–16.[2] Finally, applying these principles to the decision rendered below compels us to affirm the order denying appellant habeas relief.

### Double Jeopardy and Collateral Estoppel

■ It is beyond dispute that the Double Jeopardy Clause contained in the Fifth Amendment to the United States Constitution applies to the various states. Equally indisputable is the proposition that, with the advent of *Ashe v. Swenson*, 397 U.S. 436, 90

S.Ct. 1189, 25 L.Ed.2d 469 (1970), the doctrine of collateral estoppel has taken on constitutional overtones.[3] According to the United States Supreme Court, the doctrine is now part of the Fifth Amendment guarantee against double jeopardy. *Id.* at 446, 90 S.Ct. at 1195–96, 25 L.Ed.2d at 476. Yet, whether the doctrine applies when the factual issue in question was first addressed by an administrative agency during a civil, non-punitive proceeding is not as clear. Furthermore, we conclude that it does not for several reasons.

■ First, according to the Fifth Amendment, no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "Jeopardy denotes risk." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 354 (1975). Furthermore, the risk associated with *double* jeopardy, as the name implies, is the risk of being subjected to "a *second prosecution* for the same offense after [a prior] acquittal ... a *second prosecution* for the same offense after [a prior] conviction ... and ... *multiple punishments* for the same offense." *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995), *citing, Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) (emphasis added). Thus, inherent within the concept of double jeopardy lies the need for two distinct proceedings which are " 'essentially criminal' " in nature. *See Breed v. Jones*, 421 U.S. at 528, 95 S.Ct. at 1785, 44 L.Ed.2d at 354–55 (stating that the "risk to which the Clause refers is not present in proceedings that are not " 'essentially criminal' "); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361, 368 (1984) (holding that a proceeding or sanction is "essentially criminal" if its purpose is to punish).

■ Given that double jeopardy requires the risk of undergoing two criminal prosecutions, logic dictates that collateral estoppel,

---

2. That the reasons given by the trial court for its decision may appear faulty does not necessarily mandate reversal, for our duty is to uphold a correct judgment on any legal theory before the court. *Guaranty Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex.1986).

3. Under the theory of collateral estoppel, an issue of ultimate fact that has once been determined by a valid and final judgment cannot again be relitigated between the same parties in any future case. *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex.Crim.App.1986), *quoting Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

as embodied in the Double Jeopardy Clause, must also involve the risk of multiple prosecutions or punishments. In other words, the proceeding from which issued the pivotal fact finding must itself be "essentially criminal" before the finding can be used to estop a later criminal prosecution. If this were not so, then there could be no *double* jeopardy. And, the Texas Court of Criminal Appeals stated as much in *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Crim.App.1982).

In *Robinson,* the defendant had first undergone an examining trial wherein a justice of the peace was asked to determine if probable cause existed to hold him over for unlawfully carrying a weapon. The magistrate found that it did not. Nevertheless, the State proceeded to indict him for that same offense. In rejecting Robinson's defense of collateral estoppel, the Court of Criminal Appeals expressed that he had "not been put in jeopardy by being given an examining trial." *Id.* at 556. It then continued with the statement that "[i]nsofar as the doctrine of collateral estoppel on which he relies is but a corollary of the Double Jeopardy Clause, the fact that he has not been put in jeopardy has significance." *Id.; see Ex parte Lane,* 806 S.W.2d 336, 339–40 (Tex.App.—Fort Worth 1991, no pet.) (refusing to hold that the State was collaterally estopped because, among other things, the previous "bail hearing [did] not result in a punitive result" and "[b]ail [was] not used as, nor intended to be used as, punishment"); *Showery v. State,* 704 S.W.2d 153, 155–56 (Tex.App.—El Paso 1986, pet. ref'd) (stating that the purpose of double jeopardy and its corollary principles is to limit the ability of the State to interminably seek punishment of someone "whose conduct has already been factually evaluated ... *for purpose of punishment* ").

■ Here, we are not dealing with two "essentially criminal" proceedings. Rather, the attempt to administratively suspend appellant's driver's license was a civil matter. TEX.TRANSP.CODE ANN. § 524.012(e)(1) (Vernon Pamph.1997); *see Ex parte Tharp v. State,* 935 S.W.2d 157 (Tex.Crim.App.1996) (agreeing with those courts which held that the proceeding has civil, as opposed to criminal, aspects). Moreover, the sanction that would have been levied had the State succeeded did, and does, not constitute punishment. *Ex parte Tharp, supra; Dowling v. State,* 926 S.W.2d 752, 755–56 (Tex.App.—Amarillo 1996, pet. filed). Thus, there was no former proceeding "essentially criminal" in nature upon which appellant could base his claim of estoppel.

■ Next, and as also recognized by the United States Supreme Court, "the specific context of the rights at stake" plays an influential role in the application of collateral estoppel. *Astoria Federal Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 109–10, 111 S.Ct. 2166, 2170, 115 L.Ed.2d 96, 105 (1991). Indeed, "it is essential to consider not only the forums of the proceedings and the consequences for the defendant, but also the expectations of the litigants as they enter the first arena." *Showery v. State,* 704 S.W.2d at 156. Upon considering the context, consequences, and expectations here we find additional reason to reject appellant's argument.

■ As previously alluded to, the administrative proceeding contemplated by § 524.001 *et. seq.* of the Transportation Code is not punitive. *Dowling v. State,* 926 S.W.2d 752, 756 (Tex.App.—Amarillo 1996, pet. filed). Rather, it is remedial in nature and does nothing more than limit one's enjoyment of a mere privilege, as opposed to a right. *Ex parte Tharp v. State,* 935 S.W.2d 157 (Tex.Crim.App.1996); *Dowling v. State,* 926 S.W.2d at 756 & n. 5. That is, it exists to protect the public from the accused while the State prepares to vindicate the public's right to prosecute and punish him for allegedly committing an illegal act. *See Helber v. State,* 915 S.W.2d 955, 962 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (finding that the primary purpose of the suspension "is to protect the public from the offending driver while his criminal prosecution is pending"). Furthermore, the suspension levied, if any, is brief, *see* TEX.TRANSP.CODE ANN. § 524.022; *Ex parte Tharp, supra* (calling the suspension a "relatively mild sanction"); *Ex parte Lane,* 806 S.W.2d at 340 (noting that the "result of a bail hearing is limited in time" as basis to reject the defense of collateral estoppel), and dissipates if and when the defendant is acquitted after the actual criminal trial. *Id.* at § 524.015(b). Moreover, other courts have held that the legislature, in creating the license suspension procedure, never

intended that it be used to foreclose an actual criminal prosecution. *Helber v. State,* 915 S.W.2d at 962 (holding that the legislature never intended that administrative suspension bar a subsequent criminal prosecution).[4]

Upon weighing these indicia, we are compelled to conclude that no one ever expected the decision of the administrative judge in the civil proceeding involving a short-lived non-punitive sanction to have binding affect upon the determination of appellant's guilt in a criminal prosecution. And, that is reason enough to deny it such affect. *Showery v. State,* 704 S.W.2d at 156.

In sum, the trial court did not abuse its discretion, and we affirm the final order denying appellant a writ of habeas corpus.[5]

---

4. By statute, a decision to suspend "is independent of and not a bar to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension ... and ... does not preclude litigation of the same or similar facts in a criminal prosecution." TEX.TRANSP.CODE ANN. § 524.012(e)(2) & (3) (Vernon Pamph.1997).

5. Given our determination that the findings of an administrative law judge under § 524 of the Texas Transportation Code are not entitled to preclusive effect, we need not decide whether the parties involved in both proceedings were identical.