NO. 07-04-0085-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 12, 2004



______________________________




ADELAIDA CONTRERAS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-001686; HONORABLE ANDREW KUPPER, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Adelaida Contreras challenges the denial of her application for writ of
habeas corpus seeking reduction of the bond in the case pending against her. The trial
court, after a hearing on her request to reduce bond that was initially set at $200,000, 
reduced the amount to $50,000. She presents two issues for our review, 1) whether this
court has jurisdiction to hear an appeal on the trial court's order reducing bond and 2)
whether the trial court erred and abused its discretion by failing to set a reasonable bond. 

 Appellant is charged with murder. (1) Her bail was initially set at $200,000. A hearing
was held on her application for writ of habeas corpus seeking bail reduction on December
18, 2003. After hearing evidence and argument of counsel, the trial court reduced the bail
to $50,000 with additional terms and conditions. Appellant contends that setting bail at
$50,000 is excessive and denies her the ability to earn money to finance her defense. 

 An order ruling on an application for writ of habeas corpus on its merits following an
evidentiary hearing is appealable. Ex parte Hargett, 819 S.W.2d 866, 868 (Tex.Crim.App.
1991) (en banc). A defendant may raise, by pretrial habeas corpus, claims concerning
double jeopardy, collateral estoppel, and bail because if he were not allowed to do so until
after conviction those protections would be undermined. Jaime v. State, 81 S.W.3d 920,
924 (Tex.App.-El Paso 2002, pet. ref'd). The record indicates a hearing was held and
after testimony was given, the court ruled on the merits of appellant's application. As a
result, we have jurisdiction to hear an appeal of the trial court's order and appellant's first
issue is sustained. 

 In her second issue, appellant contends that the trial court abused its discretion in
failing to set a reasonable bail. She argues that bail is excessive and unreasonable in
violation of the Eighth Amendment to the U.S. Constitution, Article 1, Section 13 of the
Texas Constitution and Article 1.09 of the Texas Code of Criminal Procedure. 

 The trial court has discretion in determining the amount of bail. Ex parte Penagos,
810 S.W.2d 796, 798 (Tex. App.-Houston [1st Dist.] 1991, no pet.). The exercise of that
discretion will not be disturbed unless clearly abused. Ex parte Pipkin, 935 S.W.2d 213,
215 (Tex.App.-Amarillo 1996, pet. ref'd).

 The trial court is to determine the amount of bail, in part, by the following rules: (1)
The bail shall be sufficiently high to give reasonable assurance that the undertaking will be
complied with; (2) The power to require bail is not to be so used as to make it an
instrument of oppression; (3) The nature of the offense and the circumstances under which
it was committed are to be considered; (4) The ability to make bail is to be regarded, and
proof may be taken upon this point; and (5) The future safety of a victim of the alleged
offense and the community shall be considered. Tex. Code Crim. Proc. Ann. art. 17.15
(Vernon Supp. 2004-2005). 

 The trial court may consider other factors, identified by the Court of Criminal
Appeals to include: the accused's work record; her family and community ties; her length
of residency; prior record; conformity with the conditions of any previous bond; the
existence of outstanding bonds, if any; and the alleged aggravating circumstances involved
in the offense. Ex parte Rubac, 611 S.W.2d 848, 849-50 (Tex.Crim.App. [Panel Op.]
1981). (2) The burden of showing bail to be excessive is on appellant. Id. at 849.

 Appellant presented evidence at the hearing that she had been living and working
in Dallas for several months prior to her arrest. A former employer testified appellant had
worked successfully in Lubbock with "at risk youth" through the local YMCA and Lubbock
Housing Authority for a number of years. Appellant was unemployed due to a back injury
at the time she moved to Dallas. She has relatives in Lubbock, which indicates that she
has ties to the community. 

 The parties stipulated that in Lubbock County a party would have to pay a fee of ten
to fifteen percent for a bond. The testimony indicated that appellant would be able to raise
only $500 which would allow her to obtain bail in the amount of $5000. There is no
information in the record regarding appellant's current assets other than references in the
police reports to a vehicle owned by appellant at the time of the murder. 

 The State argues that the nature of the offense and appellant's previous convictions
for felonies are factors the court considered in setting bail at $50,000. Appellant has been
convicted three times for possession of a controlled substance and has additional
convictions for theft and forgery. She has been convicted of felonies in Texas and New
Mexico and has used various aliases in the past, indicating she could be a flight risk. 

 The future safety of the victim is not an issue since the victim was murdered. The
safety of the community is relevant, given appellant's prior felony record and the
circumstances surrounding the murder. The murder investigation conducted by the
Lubbock Police Department identified several witnesses who were reluctant to discuss the
homicide due to alleged involvement of the "Texas syndicate prison gang." Witnesses
expressed a concern for their own safety and indicated that the murder was a "contract
killing" ordered by members of the gang. Appellant's boyfriend, who has also been indicted
for the murder, is a member of the gang.

 Appellant was seen in the area where the murder occurred and with the murder
weapons shortly afterwards. The State alleges that she has either hidden or disposed of 
knives used in the commission of the murder. The State argues that to release appellant
prior to trial would provide her with an opportunity to dispose of the murder weapons, if
they are still in her control, and would put the lives of witnesses in jeopardy. 

 Given all the evidence presented to the trial court, and the severity of the alleged
offense, we find it was not unreasonable for the court to set bail at $50,000. It is
sufficiently high to provide assurance appellant will appear for trial but does not appear,
under the circumstances, to be an instrument of oppression. The trial court did not abuse
its discretion in setting appellant's bail at $50,000. Appellant's second issue is overruled. 
The order of the trial court is affirmed. Per Curiam


Do not publish. 
1. 
 
 
 
2. 
 



>
           On Appellant’s motion, the trial court held a suppression hearing and the following
evidence was adduced. On July 23, 2006, Officer Dewayne Griffin, Amarillo Police
Department, was responding to a theft call when he spotted Appellant walking in the
roadway of a residential area at 12:30 a.m. When Appellant saw Officer Griffin’s patrol car,
he grabbed at his waistband. Officer Griffin noted Appellant’s presence and decided to
return to speak with him after responding to the theft call due to the number of burglaries
committed after midnight in the area where Appellant was spotted. 
            After responding to the call, Officer Griffin returned. Officer Cody Moore, who also
responded to the theft call as back-up, agreed to assist. Officer Griffin located Appellant
walking across a yard. He turned his spotlight on Appellant and asked him to come over to
his patrol car and talk to him. Appellant continued walking several steps–then turned
towards him. Officer Griffin exited his car and walked over to Appellant. Appellant appeared
nervous and asked Officer Griffin if he was doing anything wrong. Officer Griffin responded
he just wanted to speak with him. As they were talking, Officer Griffin noticed a strong odor
of marihuana emanating from Appellant’s person and breath. 
           After smelling the marihuana, Officer Griffin decided to detain Appellant for further
investigation. He asked Appellant to put his hands behind his back and accompany him to
his patrol car. As he approached the patrol car, Officer Moore arrived. Officer Griffin placed
Appellant against the patrol car while he patted down Appellant’s right side. When Officer
Moore patted down Appellant’s left side, he noticed a bulge beneath his shirt and, after
pushing against the bulge, determined Appellant was carrying a handgun. He pulled up
Appellant’s shirt and disarmed him. Officer Griffin placed Appellant under arrest. 
           JoAnn Marez testified she lived at the address where Officer Griffin first turned his
spotlight on Appellant. She further testified Appellant was an acquaintance whom she
expected to visit her that night. When Officer Griffin first called out to Appellant from his
patrol car, she testified Appellant was four or five feet from her unlocked door. She also
testified Officer Griffin ordered or commanded Appellant to “stop” and “not to run.” In
rebuttal, Officer Griffin denied giving these commands. He testified that, until he smelled the
marihuana, Appellant was free to leave. At the hearing’s conclusion, the trial court denied
Appellant’s motion finding Officer Griffin’s testimony was “very credible.” 
           Standard of Review
           A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion, 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. 
Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial court’s fact findings
are based on an evaluation of witness credibility or demeanor, almost total deference is given
to its factual determinations supported by the record. St. George v. State, 237 S.W.3d 720, 725
(Tex.Crim.App. 2007). On questions of mixed law and fact that do not turn on the trial court’s
evaluation of witness credibility and demeanor, however, we conduct a de novo review. 
Amador, 221 S.W.3d at 673. 
           When, as here, no findings of fact were requested nor filed, we view the evidence in the
light most favorable to the trial court’s ruling and assume the trial court made implicit findings
of fact supported by the record. See Carmouche v. State, 10 S.W.3d 323, 327-28
(Tex.Crim.App. 2000). If the trial court’s decision is correct on any theory of law applicable to
the case, it will be sustained. Armendariz v. State, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003),
cert. denied, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004). 
           Encounter vs. Detention
           Appellant contends that he was unlawfully detained when Officer Griffin shined his
spotlight on him and commanded him to “stop” or “not to run.” The State contends that
Officer Griffin’s initial contact with Appellant was an encounter that evolved into a temporary
investigative detention after Officer Griffin detected an odor of marihuana emanating from
Appellant. 
           There are three distinct categories of interactions between police officers and citizens:
encounters, investigative detentions, and arrests. State v. Perez, 85 S.W.3d 817, 819
(Tex.Crim.App. 2002). Encounters occur when police officers approach an individual in
public to ask questions, and do not require any justification whatsoever on the part of the
officer. Harper v. State, 217 S.W.3d 672, 674 (Tex.App.–Amarillo 2007, no pet.). Moreover,
police officers do not violate the Fourth Amendment by merely approaching an individual in
a public place, by asking him if he is willing to answer some questions, by putting questions
to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his
voluntary answers to such questions. Perez, 85 S.W.3d at 819.
            A stop is deemed an investigative detention when a police officer detains a person
reasonably suspected of criminal activity to determine his identity or to momentarily maintain
the status quo while seeking additional information. Hoag v. State, 728 S.W.2d 375, 380
(Tex.Crim.App. 1987). In making a determination whether an encounter or detention
occurred, we consider all of the circumstances surrounding the incident to determine
“whether the police conduct would have communicated to a reasonable person that the
person was not free to decline the officers’ requests or otherwise terminate the encounter.”
State v. Garcia-Cantu, 253 S.W.3d 236, 242 (Tex.Crim.App. 2008). Each case must be
evaluated on its own terms. “The test is necessarily imprecise, because it is designed to
access the coercive effect of police conduct, taken as a whole, rather than to focus on
particular details of that conduct in isolation. Moreover, what constitutes a restraint of liberty
prompting a person to conclude that he is not free to ‘leave’ will vary, not only with the
particular police conduct at issue, but also with the setting in which the conduct occurs.” 
Michigan v. Chesternut, 486 U.S.567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). “It is
the display of official authority and the implication that this authority cannot be ignored,
avoided, or terminated, that results in a Fourth Amendment seizure.” Garcia-Cantu, 253
S.W.3d at 243.
           The facts of this case are quite similar to those of Stewart v. State, 603 S.W.2d 861
(Tex.Crim.App. 1980). In Stewart, two officers observed a van parked at the end of a dead
end street in front of a house under construction. 603 S.W.2d at 862. They shined their
spotlights into the van and saw four persons inside. When the driver exited the van, the
officers smelled the odor of burning marihuana. The officers subsequently found marihuana
in a knapsack placed underneath the van by its passengers. The Court of Criminal Appeals
held that “[t]he police exercised no authority until after they had smelled the odor of burning
marihuana.” Id. 
           Similarly, here, Officer Griffin did not engage in any show of authority until after he
smelled marihuana on Appellant. Like the officers in Stewart, he used his spotlight to better
view Appellant and the surrounding area in the dark. He first requested that Appellant come
over to his patrol car and, when Appellant did not, Officer Griffin exited his car and walked
over to Appellant. Appellant asked if he was doing anything wrong and Officer Griffin
responded that he just wanted to speak with him. From the record, we cannot determine the
tone or demeanor of the officer’s statement and we must, therefore, give great deference to
the trial judge’s assessment as to whether the exchange was more akin to a command or
a request.
           After Officer Griffin smelled the marihuana on Appellant’s person, he asked Appellant
to place his hands behind his back and led him to the patrol car. Thus, prior to smelling the
marihuana and detaining Appellant, Officer Griffin had simply illuminated Appellant and the
surrounding area to more clearly see in the dark and then approached Appellant to ask him
some questions. Under these circumstances, we find that Officer Griffin’s conduct would not
communicate to a reasonable person that he or she was not free to decline Officer Griffin’s
requests or otherwise terminate the encounter. 
           That Officer Griffin activated his spotlight did not necessarily make the encounter non-consensual. Garcia-Cantu, 253 S.W.3d at 245 n.43. See Hudson v. State, 247 S.W.3d 780,
785 (Tex.App.–Amarillo 2008, no pet.). Here, the spotlight was a matter of practical
necessity due to the time of night. Moreover, Appellant did not stop when the spotlight was
shined in his direction but looked back and continued walking before finally stopping and
facing Officer Griffin. Appellant was a pedestrian with open access to the entire yard and
stopped of his own volition. 
           Appellant relies on Hudson, supra, to assert that Officer Griffin’s initial interaction was
to detain him. In that case, Hudson was observed by Officer Carrillo walking across a field
in a residential area. 247 S.W.3d at 783. As he neared the curb, Officer Carrillo activated
his patrol car emergency lights and called to him. When he was asked for identification,
Hudson’s eyes were glassy and he appeared nervous, shaky. After questioning Hudson
about the use of controlled substances, Officer Carrillo placed him in front of his patrol car
and began a pat down search when he discovered a bulge in Hudson’s pocket which turned
out to be a bag of marihuana. Id. This Court determined that, under the circumstances,
Officer Carrillo’s stop of Hudson was not an encounter but a detention because Hudson
stopped in response to the activation of the emergency lights rather than of his own accord
and there was no evidence the lights were activated for safety reasons or due to darkness. 
247 S.W.3d at 785-86. Further, Officer Carrillo testified that he activated his overhead lights
as a signal to stop and would have possibly charged the pedestrian with evasion had he fled. 
Id. Here, there is evidence Appellant continued walking after Officer Griffin activated the
spotlight and requested that he come over to the patrol car. Further, Officer Griffin testified
he activated the spotlight to see more clearly in the dark and Appellant was free to stop or
not.


 
           Finally, based upon Marez’s testimony, Appellant contends Officer Griffin 
commanded or ordered him to “stop” or “not to run” in conjunction with shining the spotlight. 
Officer Griffin, however, testified that, after he located Appellant, he did not order or
command Appellant to take any action but asked him only to come over to his car or speak
with him. To resolve this conflicting testimony, we defer to the trial court’s express
determination that Officer Griffin’s testimony was “very credible.” See Garcia-Cantu, 253
S.W.3d at 249. The trial court is the sole judge of witnesses’ credibility; Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997), and may accept or reject any or all of the
witnesses’ testimony. Johnson v. State, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). See
also Garcia–Cantu, 253 S.W.3d at 241. Appellant’s sole issue is overruled.
 
Conclusion
           The trial court’s judgment is affirmed.
 
                                                                                  Patrick A. Pirtle 

                                                                                         Justice 

     

 
Quinn, C.J., dissenting.

 
 
Publish.