**The STATE of Texas, Appellant,**

v.

**Bonnie Valentine SMILEY, Appellee.**

**No. 07–96–0229–CR.**

Court of Appeals of Texas,
Amarillo.

March 31, 1997.

Potter County Attorney, Sonya Letson, Richard Martindale, Amarillo, for Appellant.

Law Offices of Charles L. Rittenberry, Charles L. Rittenberry, Amarillo, for Appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

**PER CURIAM.**

The State of Texas appealed from an order granting Bonnie Valentine Smiley's motion to suppress evidence concerning probable cause for her arrest. By a split decision in which Justices Quinn and Reavis vote to reverse and Chief Justice Boyd votes to affirm, the court reverses the order granting the suppression motion and remands the cause for further proceedings. The reasonings of each justice are contained in the opinions attached hereto.

QUINN, Justice.

I adopt the factual recitation contained in the opinion of Chief Justice Boyd but vote to reverse for the reasons espoused in *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Crim.App. 1982) and *Ex parte Pipkin,* 935 S.W.2d 213 (Tex.App.—Amarillo 1996, pet. filed).

### A. No Double Jeopardy

The collateral estoppel doctrine invoked by appellant is that discussed in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and emanating from the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Why it is unavailable to appellant is best illustrated by asking:

> If collateral estoppel (in the criminal setting) is a subset of the larger Double Jeopardy Clause, how can collateral estoppel apply when the Double Jeopardy Clause does not?

And, the only answer I can reach, which is the answer indicated by the Texas Court of Criminal Appeals in *Robinson* and reached in *Pipkin,* is that it cannot. "Insofar as the doctrine of collateral estoppel on which [the appellant] relies is but a corollary of the Double Jeopardy Clause, the fact that [the appellant] has not been put in jeopardy has significance." *Ex parte Robinson,* 641 S.W.2d at 556.[1] In other words, before any-

---

1. *Robinson* involved a claim of collateral estoppel arising from a prior examining trial. That is, because the magistrate found, as a result of the examining trial, no probable cause to bind him over for the grand jury, Robinson contended that the State could not relitigate the issue of probable cause before a grand jury. *Ex parte Robin-*

one can successfully invoke any aspect of *double* jeopardy, such as collateral estoppel, he has to have been *twice* placed in jeopardy.

Simply put, the Double Jeopardy Clause is akin to a house protecting its inhabitants against *multiple* onslaught by the State for the same offense. It is elemental that the criteria which triggers double jeopardy is the risk of multiple prosecutions or punishments for the same offense. *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). This is true regardless of whether the claim is asserted under the jeopardy clause of the Texas or United States Constitution. *See id.* at 28. Indeed, in *Broxton*, the Court of Criminal Appeals recognized as much by foregoing consideration of whether the Texas double jeopardy clause provided greater protection than its federal counterpart. As stated by the court, since appellant "was *not 'punished'* for the unadjudicated extraneous offenses at the Dockens capital punishment hearing, the double jeopardy protection ... under *either* constitution, is not implicated." *Id.* (emphasis added); *see Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990) (stating that "[c]onceptually, the state and federal constitutional provisions [regarding double jeopardy] are identical"). So, if the defendant has not been subjected to multiple prosecutions or punishments then double jeopardy has not been triggered.

Next, since *Ashe v. Swenson*, collateral estoppel can be likened to part of the roof of the double jeopardy house. *Id.* (incorporating collateral estoppel into the Double Jeopardy Clause); *Ex parte Robinson*, 641 S.W.2d at 553 (holding that collateral estoppel is a corollary of the Double Jeopardy Clause); *Ex parte Pipkin, supra* (holding that collateral estoppel is a corollary of the Double Jeopardy Clause); *Malone v. State*, 864 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, no pet.) (holding that collateral estoppel is a "subset of the ... double jeopardy issue"); *State v. Nash*, 817 S.W.2d 837 (Tex.

App.—Amarillo 1991, pet. ref'd) (holding that the doctrine of collateral estoppel is "embodied within the constitutional protection against being twice placed in jeopardy for the same offense").[2] Yet, to enjoy the protection afforded by the roof, one must still enter the house, and that requires the use of specific keys. And, as previously alluded to, one of the essential keys is obtained by having undergone the State's previous attempt at punishment for the same offense. *See Tharp v. State*, 935 S.W.2d 157, 160 (Tex. Crim.App.1996) (holding that the individual must be subjected to the risk of punishment before double jeopardy is implicated); *Ex parte Broxton*, 888 S.W.2d at 25 (holding that double jeopardy is implicated when one undergoes multiple prosecutions or punishments for the same offense); *Ex parte Pipkin*, 935 S.W.2d at 215 (holding the same). If a person has not previously been subjected to punishment or prosecution he has not been placed in jeopardy. And, if he has not been before placed in jeopardy, he lacks a key essential to opening the door to double jeopardy and partaking of its subpart known as collateral estoppel. *Id.; accord Ex parte Robinson*, 641 S.W.2d at 556 (rejecting Robinson's proffer of collateral estoppel since, among other things, he was not previously placed in jeopardy via an examining trial); *Ex parte Lane*, 806 S.W.2d 336, 339–40 (Tex. App.—Fort Worth 1991, no pet.) (rejecting the claim of collateral estoppel because, among other things, the prior bail hearing did not involve punishment); 2 W. LaFave & J. Israel, *Criminal Procedure* § 17.4, p. 384 (1984) (stating that collateral estoppel does not interfere with the State's prosecution of someone for murder, for instance, after it unsuccessfully attempted to revoke probation based upon the same offense "for the reason that no jeopardy attached at the revocation proceeding"); *Green v. State*, 463 So.2d 1139, 1140 (Fla.1985) (holding that because "petitioner was not subjected to conviction or punishment for his new criminal conduct [via a probation revocation hearing] ... the dou-

son, 641 S.W.2d 552, 553 & 556 (Tex.Crim.App. 1982).

**2.** The effect of collateral estoppel is analogous to that of double jeopardy but on a smaller scale.

Rather than barring relitigation of the same offense, it bars relitigation of particular facts. *State v. Nash*, 817 S.W.2d 837, 840 (Tex.App.— Amarillo 1991, pet. ref'd).

ble jeopardy clause through the doctrine of collateral estoppel is not applicable"); *United States v. Miller*, 797 F.2d 336, 340–41 (6th Cir.1986) (holding that since jeopardy did not attach at the revocation hearing, collateral estoppel could not be invoked as a result of that hearing); *Showery v. Samaniego*, 814 F.2d 200 (5th Cir.1987) (holding that jeopardy must attach before action in a prior proceeding may collaterally estop a subsequent prosecution).[3]

Here, Bonnie Smiley was not placed in jeopardy via the prior administrative license revocation proceeding. As held in *Tharp v. State*, the remedies contemplated in such a proceeding were, and are, not punishment. *Tharp v. State*, 935 S.W.2d at 160–61; *accord Ex parte Pipkin*, 935 S.W.2d at 216; *Dowling v. State*, 926 S.W.2d 752, 756 (Tex.App.— Amarillo 1996, pet. ref'd). Thus, she lacked a key needed to enter into the realm of double jeopardy and enjoy the protection of its subpart known as collateral estoppel.

Additionally, that she merely invoked the doctrine to suppress the use of certain evidence as opposed to precluding a subsequent prosecution *in toto* matters not for several reasons. First, suppressing necessary evidence can have, for all practical purposes, the actual effect of precluding a subsequent prosecution. Second, and more importantly, collateral estoppel is nothing more than a subset of the whole concept known as double jeopardy. *Malone v. State*, 864 S.W.2d at 159. And, logically, if something elemental to the concept of double jeopardy is absent

(*i.e.*, prior punishment or prosecution), it is likewise absent *vis-a-vis* its subsets.

*Ashe* did not say collateral estoppel was some independent protection found in the United States Constitution; it did not say that collateral estoppel stood alone.[4] Nor has any case which I know of so held, in the criminal setting. Instead, the United States Supreme Court recognized the defense as a *corollary* or part of the Double Jeopardy Clause. *See Showery v. Samaniego*, 814 F.2d at 202–203 (rejecting the notion that collateral estoppel, *as recognized in Ashe*, had an existence independent of the double jeopardy clause and the latter's requirement for prior jeopardy). As alluded to above, the former does not stand alone but atop the house. And, if there is no house because the individual has never been placed in jeopardy, then there can be no roof.

This is not to say that some form of collateral estoppel, as recognized in common law, may not apply. Indeed, collateral estoppel originally was little more than, and before *Ashe* existed for the most part as, a judicially created, common law precept. Yet, its application via the common law is not before us given that Smiley expressly couched her claim upon the Double Jeopardy Clause.

In sum, collateral estoppel, as per *Ashe*, is a subset of double jeopardy and can have no application unless the claimant was previously placed in jeopardy. Because Smiley was not so jeopardized, I cannot extend her the protections of collateral estoppel.

**3.** Other than *Robinson* and *Pipkin*, my research has uncovered no Texas case which has expressly addressed this point. Indeed, the opinions simply assume that collateral estoppel may apply even though the claimant has never before been placed in jeopardy. None have actually analyzed the matter. And, though the Texas Court of Criminal Appeals in *Ex parte Tarver*, 725 S.W.2d 195 (Tex.Crim.App.1986) did afford collateral estoppel effect to a determination made in a revocation hearing, nowhere did the court address the pivotal issue I discuss here or the Court of Criminal Appeals mentioned in *Robinson*. Moreover, *Tarver* emphasized the United States Supreme Court decision in *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) as supporting the notion that factual determinations of an administrative body may be the basis for a subsequent claim of collateral estoppel. Yet, in relying upon

*Utah Construction*, the *Tarver* court apparently overlooked the fact that the *Utah Construction* did not involve a punitive proceeding; nor did it involve collateral estoppel as recognized under the Double Jeopardy Clause or *Ashe*. Under that circumstance, its value *vis-a-vis* disputes entailing collateral estoppel under the Fifth Amendment to the United States Constitution is highly suspect. Thus, I fail to see *Tarver* and *Utah Construction* as informative, much less, dispositive of the issue at bar.

**4.** The court in *Robinson*, however, alluded to the possibility that collateral estoppel may implicate due process concerns. *Ex parte Robinson*, 641 S.W.2d at 556 n. 10. Yet, Smiley did not invoke below the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## B. Administrative Decision Lacks Preclusive Effect

I also reject Smiley's claim for the alternative reasoning in *Ex parte Pipkin*, 935 S.W.2d at 216–17. The actions of an administrative law judge in a license revocation proceeding were never expected or intended to have preclusive effect in a subsequent criminal action. *Id.* at 216–17; *Showery v. State*, 704 S.W.2d 153, 156 (Tex.App.—El Paso 1986, pet. ref'd) (stating that the nature of the forum, the consequences to the defendant, and the expectations of the litigants as they enter the first arena must be considered before extending preclusive effect to the first proceeding).

Consequently, I would reverse the decision of the trial court.

REAVIS, Justice.

Since the advent of *Ex parte Tharp*, 935 S.W.2d 157 (Tex.Cr.App.1996), it is clear that an administrative suspension of a driver's license does not constitute punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment, and that a subsequent prosecution for driving while intoxicated does not implicate protection under the Double Jeopardy Clause against multiple punishments for the same offense. *Id.* at 160–61. Accordingly, the provision of section 724.048(a)(2) of the Transportation Code,[1] which provides that a determination by an administrative law judge in a suspension hearing is not an estoppel as to any matter in an adjudication of a criminal charge arising from the same occurrence, is controlling in situations such as the one at bar. *Id.* at 159.

Appellee's written pretrial motion to suppress evidence did not expressly raise collateral estoppel as a ground for granting the motion; but, at the hearing, appellee urged that the Administrative Law Judge's finding of no probable cause for appellee's arrest was controlling, and collateral estoppel barred reconsideration of the question.[2] Resultantly,

based upon the record and application of section 724.048(a)(1) and (2) of the Transportation Code, collateral estoppel does not bar appellee's further prosecution for driving while intoxicated.

Appellee contends that because the State did not urge section 724.048(a)(1) and (2) of the Transportation Code in the trial court, the statute cannot be raised for the first time on appeal. However, the administrative decision which appellee introduced into evidence expressly made reference to the former statute and sections 524 and 724 of the Transportation Code. The statement of facts reflects that the State opposed the motion to suppress evidence for the reason " that collateral estoppel simply does not apply." Article 28.01, section 1(6) of the Texas Code of Criminal Procedure does not require that the State file a written or formal response to a motion to suppress. Because the applicability of section 724.048(a)(1) and (2) presented a question of law, a specific reference to the applicable statute was not necessary to preserve the application of all applicable statutes. *State v. Hurd*, 865 S.W.2d 605 (Tex. App.—Fort Worth 1993, no pet'n).

For these reasons, I would reverse the decision of the trial court, and remand the matter for further determination consistent with this opinion.

BOYD, Chief Justice.

The question presented by this appeal is whether the doctrine of collateral estoppel precludes the State from relitigating an issue purportedly resolved against it in a prior license suspension hearing. The trial court held the doctrine applicable. Challenging that holding, the State has brought this appeal pursuant to Article 44.01(a)(5) of the Texas Code of Criminal Procedure. A majority of the court votes to reverse the judgment of the trial court and remand it to the trial court for further proceedings consistent with that decision.

---

1. References herein to the Transportation Code are to the Texas Transportation Code Annotated (Vernon Pamph.1997).

2. Neither the motion to suppress, or the evidence presented, raised any claim or contention that

appellee's professional, occupational or proprietary interests would be adversely affected if her driver's license was suspended, thus, that question is not before us.

The facts by which this question is presented are simple and, for the most part, not in dispute. In the early morning hours of January 1, 1996, Officer Darryl Wertz of the Amarillo Police Department saw a car that appeared to have been in an accident. Appellee and two other women were standing nearby.

Although he was given conflicting stories, Wertz determined that appellee had been driving the vehicle. After another officer performed a series of field sobriety tests, appellee was arrested for the offense of Driving While Intoxicated [1] and her companions were arrested for Public Intoxication. The fact that the arrests were without warrants is undisputed.

Pursuant to Chapter 724 of the Texas Transportation Code (Vernon Pamph.1997),[2] Officer Wertz requested that appellee give a breath sample. She refused. Based on that refusal the State sought to suspend appellee's driver's license. *See*, Chapter 724, subchapter C, Tex. Trans. Code Ann. (Vernon Pamph.1997). Appellee requested a hearing on the suspension. Section 724.041. At a hearing held March 14, 1996, before an administrative law judge both the State and appellee were represented by counsel. Witnesses were sworn and gave testimony. In a written decision the administrative law judge denied the State's petition to suspend appellee's license. The judge also made findings of fact including the following:

> The Department did not prove, by a preponderance of the evidence that: there was probable cause to believe Defendant was intoxicated while driving in that although there was some indicators of possible intoxication, i.e., the smell of alcohol and glassy/bloodshot eyes, there was contradictory evidence as to the results, if any, of any field sobriety tests.

There is no indication in the record that the State attempted to appeal this ruling as authorized by Section 724.047. The State subsequently sought to prosecute appellee for Driving While Intoxicated.

Alleging that her arrest was unlawful in that it was not pursuant to a warrant and there was no probable cause, appellee moved to suppress all evidence arising from her arrest. At the hearing on this motion, appellee argued that the ruling in the license suspension action estopped the State from relitigating the issue. After taking some testimony, including a description of evidence introduced in the license suspension hearing, the trial court agreed that collateral estoppel barred the State from relitigating the issue of probable cause. The State brings this appeal advancing one point of error asserting that a factfinding in a license revocation proceeding cannot collaterally estop the litigation of that issue in a subsequent criminal proceeding.

The State advances four arguments in support of their challenge, that: (1) the doctrine of collateral estoppel in these circumstances is barred by statute and prior case law, (2) there was an insufficient record of the prior proceeding to determine if collateral estoppel applied to the suppression hearing, (3) the issue at the suppression hearing was not the same issue decided by the administrative law judge, and (4) collateral estoppel can only apply when the prior judgment is one of acquittal.

Because I believe the trial court did not err in applying the principle of collateral estoppel, or issue preclusion, I must dissent from the majority holding of this court. For the reasons stated herein, I am convinced that issue preclusion can, and in this case did, arise from an administrative license suspension hearing.

I agree with appellee's position that Section 724.048(a) does not preclude the application of collateral estoppel. Both the United States Supreme Court and our Court of Criminal Appeals have defined collateral estoppel to mean "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397

1. *See,* Tex. Penal Code Ann. § 49.04 (Vernon 1994 & Supp.1997).

2. All section numbers herein are to the Texas Transportation Code Ann. (Vernon Pamph.1997), unless otherwise stated.

U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Ex parte Mathes*, 830 S.W.2d 596, 598 (Tex.Crim.App.1992). Nothing in that definition requires that the prior judgment be the result of a criminal proceeding. Indeed, in *Ex parte Tarver*, 725 S.W.2d 195 (Tex.Crim.App.1986), that court found the trial court erred in rejecting Tarver's collateral estoppel claim even though he had not been placed in jeopardy by the prior probation revocation proceeding. *Id.* at 197.

In *Ashe*, the Federal Supreme Court held that in the criminal law context, collateral estoppel is a right protected by the Fifth Amendment to the Federal Constitution.[3] Thus, because the Fifth Amendment is applicable to the individual states, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969), the protections afforded by that amendment, including collateral estoppel, are a matter of constitutional right. *Ashe*, 397 U.S. at 445–46, 90 S.Ct. at 1195–96. To the degree that a statute is in conflict with the State or Federal Constitutions, the statute must yield.[4] U.S. Const. art. VI, cl. 2; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803); *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim.App.1978). The constitutional infirmity of this statute has been noted before. *See Arnold v. State*, 920 S.W.2d 704, 708 (Tex. App.—Houston [1st Dist.] 1996, pet. filed) (discussing predecessor statute Tex.Rev.Civ. Stat.Ann. art. 6687b-1, § 5(d) (repealed by Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 24, 1995 Tex.Gen. Laws 1025, 1870–71)). I find the State's argument that issue preclusion is barred by statute unavailing.

While the State cites several cases as support for its position that license revocation proceedings do not give rise to collateral estoppel, careful examination of the claims asserted in those cases reveals them to be inapplicable. In examining those cases, it is important to note the distinction between the protections against double jeopardy, which bar multiple prosecutions or punishments for the same offense, *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989), and the much narrower doctrine of collateral estoppel, or issue preclusion,[5] precluding relitigation of specific facts that were actually resolved in a prior litigation. *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194.

The distinction is significant because the standards by which double jeopardy claims are measured, the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), are different from the standards applicable to issue preclusion, in which the preclusion arises from the fact that an *issue* was actually litigated and decided in a prior proceeding. Because both the doctrines are embodied within the constitutional protection against being twice placed in jeopardy, *Ladner v. State*, 780 S.W.2d 247, 250 (Tex.Crim.App. 1989), the distinction between double jeopardy and issue preclusion is a difficult one which has led some parties, and even some courts, to use one term in place of the other. *See e.g. Nash*, 817 S.W.2d at 839–40 (discussing trial court's reference to collateral estoppel in addressing a plea of double jeopardy), *United States v. Miller*, 797 F.2d 336, 341 (6th Cir.1986) and *Thompson v. Reivitz*, 746 F.2d 397, 400 (7th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 849 (1985) (both observing that the collateral estoppel claims were merely restatements of the double jeopardy contentions).[6] Thus, in

---

**3.** The Court of Criminal Appeals has held that Article I, § 14 of the Texas Constitution provides the same protections as the Fifth Amendment, *Zimmerman v. State*, 750 S.W.2d 194, 209 (Tex. Crim.App.1988).

**4.** This case does not involve the exception for those rare, if not extinct, statutes extant at the time of the admission of Texas to the union. *League v. De Young*, 52 U.S.(11 How.) 185, 203, 13 L.Ed. 657 (1850).

**5.** Finding the term issue preclusion more descriptive of the doctrine at issue, I use it in this

opinion. It is important to note that use of the term issue preclusion does not imply any distinction from the cases using the term collateral estoppel.

**6.** Our recent decision in *Ex parte Pipkin*, 935 S.W.2d 213 (Tex.App.—Amarillo 1996, pet. requested), also illustrates this occasional confusion by litigants. In that case, an appellant sought a writ of habeas corpus asserting the State was "collaterally estopped" from trying him for DWI after he prevailed at a license suspension hearing. Because the appellant sought to bar his prosecution rather than merely

considering the applicability of previous cases, it is necessary to look to the claims actually asserted rather than the labels given those claims.

The importance of the distinction between double jeopardy and issue preclusion is well illustrated in *Ex parte Tarver, supra.* As noted above, that case involved an appeal from a denial of a pretrial writ of habeas corpus asserting both double jeopardy and collateral estoppel grounds. The appellant claimed that his prosecution for assault was barred by double jeopardy after a judge had found the evidence of the assault "totally incredible" at an attempted probation revocation based on the same assault. He also asserted that the court's finding invoked collateral estoppel by which the State was prevented from relitigating the fact of the assault. The Court of Criminal Appeals rejected the double jeopardy claim on the basis that the revocation proceeding had not placed him in "jeopardy" for the assault. This was so, the court reasoned, because the punishment he might receive because of the probation revocation arose from the original offense, possession of cocaine, not the subsequent assault. *Id.* at 197.

In contrast, however, the court found the corollary doctrine of collateral estoppel barred the State from prosecuting the appellant for the assault because "the issue of whether appellant committed the particular assault alleged in the information has been found adversely to the State (in the probation revocation hearing), and the doctrine of collateral estoppel bars relitigating the issue...." *Id.* at 200.

Parenthetically, the court also rejected the notion that *res judicata,* and implicitly its subset issue preclusion, could not arise out of administrative proceedings. *Id.* at 199. In its discussion, the court cited *United States v. Utah Construction and Mining Company,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1560, 16

L.Ed.2d 642 (1966), for the proposition that the doctrine can apply when an administrative agency is "acting in a judicial capacity" and the parties have had an adequate opportunity to litigate. *Tarver,* 725 S.W.2d at 195. I have no difficulty finding that the license revocation hearing before an administrative judge who must, by statute, be an attorney, Tex. Govt.Code Ann. § 2003.041(b) (Vernon Pamph.1997), and in which both parties are represented by counsel and have the opportunity to present evidence, satisfies that requirement. *Cf. State v. Aguilar,* 901 S.W.2d 740, 742 (Tex.App.—San Antonio 1995, pet. granted).

In *Showery v. Samaniego,* 814 F.2d 200 (5th Cir.1987) the Fifth Circuit suggested that the Court of Criminal Appeal's decision in *Tarver* extended the protections afforded by the doctrine of issue preclusion beyond that dictated by the Fifth Amendment. Assuming, without deciding, that the statement in *Showery* would extend beyond probation revocation proceedings and be applicable to the type of proceeding before us, it would not alter the effect of *Tarver.* It is within the prerogative of the Court of Criminal Appeals to find greater protections in the Texas Constitution than those afforded by its federal counterpart. *Heitman v. State,* 815 S.W.2d 681, 682 (Tex.Crim.App.1991).[7]

Being convinced that issue preclusion can, in a proper circumstance, arise from an administrative license suspension proceeding, I believe we should review this record under the standards applicable to such claims. That review mandates two inquiries. First, what facts were necessarily determined in the first proceeding? Second, has the State sought to relitigate facts necessarily established against it in the first proceeding? *Dedrick v. State,* 623 S.W.2d 332, 336 (Tex. Crim.App.1981) (quoting from *United States v. Mock,* 604 F.2d 341 (5th Cir.1979)).

---

bar the relitigation of specific facts, his claim was one of double jeopardy, and was resolved with reference to cases discussing that doctrine. Because of that distinction, our holding in *Pipkin* is inapplicable here.

**7.** Moreover, if *Tarver* is based on Article I, Section 14 of the Texas Constitution, any tension

between the holding in *Tarver* and *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Crim.App.1982), would be resolved because in *Robinson,* the court expressly held that he had waived any complaints based on Article I, Section 14. 641 S.W.2d at 553, fn. 1.

The State argues that the first requirement is not met because no record of the license suspension proceeding was before the trial court. Therefore, the State reasons, the court could not properly determine what issues were determined in the earlier proceeding. Both the United States Supreme Court and our Court of Criminal Appeals have held that the requirement of showing what issues were determined in an earlier proceeding can be satisfied in one of two ways: by an express finding by the factfinder in the first proceeding stating the basis of its decision or, when the prior judgment is based on a general verdict, by "examin[ing] the record of the prior proceedings, taking into account the pleadings, evidence, charge, and other relevant matter ..." in order to determine whether judgment in the former trial was based upon the same ultimate fact issues as those sought to be estopped in the subsequent proceeding. *Ladner,* 780 S.W.2d at 254 (quoting from *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194).

The first method is illustrated in both *Ashe* and *Tarver.* In *Ashe,* the jury elaborated on its not guilty verdict by stating that it was "due to insufficient evidence." 397 U.S. at 439, 90 S.Ct. at 1192. Thus, the court concluded the prosecution was estopped from relitigating the issue of Ashe's involvement in a robbery. *Id.* at 447, 90 S.Ct. at 1196. In *Tarver,* and in holding that issue preclusion applied, the court emphasized the judge's fact finding that the evidence produced at the revocation hearing was not credible. To remove any doubt as to the significance of that fact the court stated:

> A mere overruling of a State's motion to revoke probation is not a fact-finding that will act to bar subsequent prosecution for the same alleged offense.... It is only in the particular circumstances of this case, where the trial court does make a specific finding of fact that the allegation is "not true," that a fact has been established so as to bar relitigation of that same fact.

*Tarver,* 725 S.W.2d at 200.

Even so, unlike the general verdicts involved in *Ladner, Nash,* and *Ex parte Lane,*

806 S.W.2d 336, 339 (Tex.App.—Fort Worth 1991, no pet.), the judgment upon which appellee bases her argument includes an express finding by the judge of the absence of probable cause to believe appellee was operating a motor vehicle while intoxicated. Thus, I would hold that appellee has satisfied the first requirement to establish issue preclusion.

The second requirement for the application of issue preclusion is that the issue sought to be precluded is the same issue litigated in the prior proceeding. In support of its position that the issue at the suppression hearing was not the same as that presented to the administrative law judge, the State cites and relies upon *Neaves v. State,* 767 S.W.2d 784 (Tex.Crim.App.1989). However, that case is distinguishable. In *Neaves,* the appellant sought to preclude the State from establishing that he was driving while intoxicated based upon a finding in a license suspension action that there was no probable cause to believe he committed the offense. The court rejected Neaves' argument and explained the difference between the issues in the two proceedings in the following way: The question in the license suspension action was whether, at the time of the arrest, the officer had probable cause to *believe* Neaves was driving while intoxicated while the question at the DWI trial was whether the appellant was *actually driving while intoxicated.* Because evidence obtained after the arrest would be relevant to resolving the second issue, but not the first, the issues were different. *Id.* at 787.

Analyzed, the relevant issue in the license suspension hearing was whether Officer Wertz had probable cause to arrest appellee because of a reasonable belief she was operating a motor vehicle in a public place while intoxicated at the time of her arrest. Section 724.042(1), (2). Likewise, the issue before the trial court at the suppression hearing was whether Officer Wertz had probable cause to arrest appellee at the time he did so. The issues are so similar that I find the second requirement to establish issue preclusion was satisfied.[8]

---

**8.** There is at least one conceivable situation in

which the issue at a subsequent suppression

In support of its proposition that issue preclusion cannot be predicated on the outcome of a license suspension proceeding, the State cites two cases from other courts of appeal, *Ex parte Ayers*, 921 S.W.2d 438 (Tex. App.—Houston [1st Dist.] 1996, no pet.), and *Holmberg v. State*, 931 S.W.2d 3 (Tex.App.—Houston [1st Dist.] 1996, pet. filed). Both those are factually similar to the case before us. There is, however, a significant distinction in that the relief requested in each of those habeas corpus cases was dismissal of the prosecution against them rather than to preclude the litigation of specific facts. Although Ayers and Holmberg may have characterized their claims as involving collateral estoppel, their arguments and the relief sought, as demonstrated by the courts' discussions, were appropriate to claims of double jeopardy. *See also Miller*, 797 F.2d at 341.

For example, in *Ayers*, the appellate court found the trial court had not erred in denying the relief sought because "the State could potentially establish the appellant's guilt from evidence not derived from her arrest...." 921 S.W.2d at 441. Implicit in that finding is the recognition that the State might have been estopped from relitigating the propriety of her arrest. In this case, of course, relitigation of the propriety of her arrest is exactly what appellee successfully sought to prevent.

In *Holmberg*, the court recognized its previous decision in *Ayers* and pointed out that in a license revocation hearing, probable cause to arrest is an ultimate fact and one of the elements the State must prove to revoke a license. However, it noted, probable cause to arrest is not an element of the offense, it is merely evidential in nature and a finding of a lack of probable cause to arrest, in itself, is not sufficient to give rise to a double jeopardy plea. *Holmberg*, 931 S.W.2d at 5.

Citing the statement in *Flores v. State*, 906 S.W.2d 133, 141 (Tex.App.—San Antonio 1995, no pet.) that "[T]he doctrine of collater-

al estoppel is limited to situations in which the prior final judgment resulted in an acquittal," the State next argues that collateral estoppel can only arise from an acquittal; thus, because the decision of an administrative law judge is neither a conviction or acquittal, it cannot give rise to collateral estoppel.

However, the statement of the *Flores* court must be considered in the light of its statement immediately preceding that "[a]pplication of the rule (issue preclusion) depends upon whether some issue necessary for the prosecutor's case in the second trial has necessarily been found for the defendant in the first trial." *Id.* at 140. In this case, as I have stated, the hearing before the administrative law judge met all the requirements for a controverted judicial hearing and the question of the existence of probable cause was an ultimate issue necessary for the prosecution (the State) to obtain the relief sought, *i.e.*, suspension of the driver's license. Thus, the requirement actually stated by the *Flores* court for imposition of issue preclusion was met here.

Moreover, in each of the authorities cited in *Flores* in support of the general statement that an acquittal is necessary for invocation of issue preclusion, the courts were considering convictions in the lower courts. For example, in *Simien*, the court noted:

> Federally, *Ashe* has been construed to recognize a distinction between an acquittal (under circumstances where the presence or absence of the accused at the scene of the crime is resolved in his favor) and a conviction in the prior trial of one accused of crimes occurring at the same time. Under this construction, the doctrine of collateral estoppel does not apply if the first trial resulted in a conviction.

*Simien v. State*, 514 S.W.2d 452, 454 (Tex. Crim.App.1974). It is in this light that the general statements that issue preclusion would not arise from an acquittal were made.

---

hearing could be different from that before the administrative law judge. Because the issue on which the administrative law judge's ruling was based was probable cause to believe appellee was "intoxicated while driving," the State would not be precluded from showing the arrest was valid

based on probable cause to believe she had committed another offense. However, there is nothing in this record showing that, at the time of the arrest, Officer Wertz arrested appellee for any offense other than driving while intoxicated. That being true, that question is not before us.

I do not agree that either *Flores* or the cases cited by it support a conclusion that issue preclusion would not be applicable in a case such as this one.

The State finally argues that a ruling on a motion to suppress is merely a type of evidentiary ruling and "[n]o case has been found wherein the doctrine of collateral estoppel has been utilized to determine the admissibility of evidence." Suffice it to say, I disagree. Under the authorities I have cited, collateral estoppel prevents the relitigation of facts previously determined. By definition, then, it must be utilized to determine the admissibility of evidence. *See also, Wingate v. Wainwright,* 464 F.2d 209, 215 (5th Cir.1972); *United States v. Rosenberger,* 872 F.2d 240, 242 (8th Cir.1989); *United States v. Thoresen,* 428 F.2d 654, 667 (9th Cir.1970); *United States v. Levasseur,* 699 F.Supp. 965, 980–81 (D.Mass.1988); *People v. Page,* 155 Ill.2d 232, 185 Ill.Dec. 475, 483–87, 614 N.E.2d 1160, 1168–72 (1993); *Miller v. State,* 545 So.2d 343, 344 (Fla.Dist.Ct.App.1989); *State v. Moulton,* 481 A.2d 155, 161–62 (Me.1984), *affirmed,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

At oral argument, the State suggested that affirmance of the trial court's holding might require the application of issue preclusion in favor of the State when it has prevailed in an administrative hearing. With regard to establishing the elements of the offense at a trial on the merits, courts uniformly hold that issue preclusion cannot lessen the State's burden. *United States v. Dixon,* 509 U.S. 688, 710 fn. 15, 113 S.Ct. 2849, 2863 fn. 15, 125 L.Ed.2d 556 (1993); *Ashe,* 397 U.S. at 464–65, 90 S.Ct. at 1205 (Burger, dissenting) ("courts that have applied the collateral-estoppel concept to criminal actions would certainly not apply it to both parties, as is true in civil cases").

Although several federal cases have applied issue preclusion against criminal defendants that had lost motions to suppress, *Rosenberger, Thoresen, Levasseur,* if the State had prevailed in the license suspension proceeding it could not have precluded appellee from relitigating the suppression issue in a subsequent criminal proceeding. This is so because Fifth Amendment protections, and necessarily their state constitution counterparts, do not operate in favor of the State. *Knapp v. Cardwell,* 667 F.2d 1253, 1268 fn. 5 (9th Cir.1982) (Adams, concurring in part and dissenting in part), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). Without those constitutional implications, Section 724.048(a) of the Transportation Code would be effective to prevent the State from asserting issue preclusion.

Additional cases touching on this issue merit a brief discussion.[9] In *Ex parte Poplin,* 933 S.W.2d 239 (Tex.App.—Dallas 1996, no pet. h.); *State v. Brabson,* 899 S.W.2d 741 (Tex.App.—Dallas 1995, pet. granted); and *Walton v. State,* 831 S.W.2d 488, 490 (Tex.App.—Houston [14th Dist.] 1992, no pet.), the courts held or at least discussed the proposition that collateral estoppel cannot arise from license suspension proceedings. Each one of these opinions rely upon *Burrows v. Texas Dept. of Public Safety,* 740 S.W.2d 19, 21 (Tex.App.—Dallas 1987, no pet.) for that proposition. *Burrows,* in turn, relies upon *Davenport v. State,* 574 S.W.2d 73 (Tex.Crim.App.1978), in which the court held that *res judicata* cannot arise from a probation revocation proceeding because revocation proceedings are essentially "administrative in nature." *Davenport,* 574 S.W.2d at 76.

In *Tarver,* the court noted this holding in *Davenport,* but also noted the Supreme Court decision in *United States v. Utah Construction and Mining Company,* 384 U.S. at 421–22, 86 S.Ct. at 1559–60, to the contrary, and expressly overruled that portion of *Davenport.* In doing so, the *Tarver* court commented:

> To the extent that a probation revocation hearing involves a trial court acting as finder of fact, after a full hearing on an issue at which both the State and an accused are represented by counsel, the

**9.** Apparently recognizing the suspect authority of these cases, the State has not relied upon them in support of its argument.

court is certainly "acting in a judicial capacity."

725 S.W.2d at 199.[10]

With regard to the question whether collateral estoppel can, in the proper circumstances, arise from a license suspension, the court's opinion in *State v. Groves*, 837 S.W.2d 103 (Tex.Crim.App.1992) is instructive. That case also involved the application of collateral estoppel to prevent relitigation of probable cause determined adversely to the State in a license revocation proceeding. In addressing collateral estoppel, the court discussed the general rules applicable to the doctrine and held that because there is nothing in the record to indicate that the finding specifically related to the presence or absence of probable cause to arrest appellee, the doctrine was not applicable. By that discussion and holding the court implicitly, if not explicitly, recognized collateral estoppel could arise from a license suspension hearing under circumstances such as we have before us.

For the reasons which I have discussed, I would affirm the judgment of the trial court.

**10.** Another case that relied on *Davenport* was *Showery v. State*, 704 S.W.2d 153 (Tex.App.—El Paso 1986, pet. ref'd). In addition to its reliance on *Davenport, Showery* distinguished the First District Court of Appeals opinion in *Ex parte Tarver*, 695 S.W.2d 344 (Tex.App.—Houston [1st Dist.] 1985), *affirmed*, 725 S.W.2d 195 (Tex.Crim. App.1986), as only "an effort to persuade the Court of Criminal Appeals to change its position. . . ." As is apparent from the Court of Criminal Appeals' disposition of *Tarver*, that effort was successful, leaving little support for *Showery*.